IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :       CRIMINAL ACTION
                                :
        v.                  :
                                :       NO. 08-129
SHAUN PETTIWAY                :

MEMORANDUM

Bartle, J.                           June 25, 2020

       The Court has before it the petition of defendant
Shaun Pettiway to transfer him to home confinement under the
Coronavirus Aid, Relief, and Economic Security ("CARES") Act,
Pub. L. No. 116-136, 134 Stat. 281 (2020).

I

       On December 4, 2009, following a three-day trial, a
jury found defendant guilty of one count of making false
statements in a passport application in violation of 18 U.S.C.
§§ 1542 and 2 and one count of aggravated identity theft in
violation of 18 U.S.C. §§ 1028A(a)(1) and 2.  The Court
sentenced defendant to 51 months imprisonment to be followed by
three years of supervised release.  His sentence was imposed
consecutively to his state court sentence.  Our Court of Appeals
affirmed defendant's federal conviction and sentence.  See United
States v. Pettiway, No 10-1826 (3d Cir. Apr. 28, 2011).
Defendant's projected release date is January 20, 2022.  He is

currently serving his sentence at the Petersburg Medium Federal Correctional Institution in Hopewell, Virginia.

## II

Defendant seeks release into home confinement under the CARES Act which was signed into law to address ongoing concerns related to COVID-19 in the federal prison system.[1]  He states that his request for home confinement be granted because: (1) his "instant offense [was] non-violen[t]"; (2) he has "no pending charges/detainers"; (3) he has been "12 months clear of misconduct"; (4) he has a "stable and verifiable release plan"; (5) he would have "minimal level of recidivism score" but for the fact that he's been incarcerated for 14 years; and (6) he has "completed 50% of [his] sentence."  If transferred to home confinement, he would live in Philadelphia at a home "owned by [his] grandmother for over 50 years."

## III

The CARES Act eliminates the maximum amount of time the Director of the Bureau of Prisons ("BOP") may place a prisoner on home confinement toward the end of his or her sentence.  See CARES Act § 12003(b)(2).  This time limit is set

---

1.   The Government represents that as of June 22, 2020 "there are no inmates or staff who have confirmed positive test results for COVID-19 at Petersburg Medium FCI."

forth in the First Step Act.  <u>See</u> 18 U.S.C. § 3624(c).  The

First Step Act instructs the Director of the BOP:

> (1) . . . to the extent practicable, [to]
> ensure that a prisoner serving a term of
> imprisonment spends a portion of the final
> months of that term (not to exceed 12
> months), under conditions that will afford
> that prisoner a reasonable opportunity to
> adjust to and prepare for the reentry of
> that prisoner into the community. Such
> conditions may include a community
> correctional facility.

18 U.S.C. § 3624(c)(1).  The First Step Act also provides that:

> (2) . . . [t]he authority under this
> subsection may be used to place a prisoner
> in home confinement for the shorter of 10
> percent of the term of imprisonment of that
> prisoner or 6 months. The [BOP] shall, to
> the extent practicable, place prisoners with
> lower risk levels and lower needs on home
> confinement for the maximum amount of time
> permitted under this paragraph.

18 U.S.C. § 3624(c)(2).

The CARES Act authorizes the BOP Director to release

certain inmates into home confinement during the coronavirus

pandemic.  It provides:

> During the [period beginning on the date on
> which the President declared a national
> emergency . . . with respect to the
> Coronavirus Disease 2019], if the Attorney
> General finds that emergency conditions will
> materially affect the functioning of the
> [BOP], the Director of the [BOP] may
> lengthen the maximum amount of time for
> which the Director is authorized to place a
> prisoner in home confinement under the first
> sentence of section 3624(c)(2) of title 18,
> United States Code, as the Director
> determines appropriate.

CARES Act § 12003(b)(2).

On April 3, 2020, United States Attorney General William Barr issued a memorandum in which he found that emergency conditions as a result of COVID-19 have materially effected the functioning of the BOP.  He granted the Director of the BOP the authority to release into home confinement certain inmates at greater risk due to COVID-19 based on several discretionary factors.  The Attorney General set out these factors in a separate memorandum dated March 26, 2020:

- The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum-security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;

- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility; [and]

-4-

- The inmate's crime of conviction, and
  assessment of the danger posed by the inmate
  to the community. Some offenses, such as sex
  offenses, will render an inmate ineligible
  for home detention. Other serious offenses
  should weigh more heavily against
  consideration for home detention.

In addition to these factors, before release into home confinement, an inmate must be examined by the BOP Medical Director (or a designee) for risks related to COVID-19.  The Medical Director must assess those risks at the inmate's facility as well as the location where he or she seeks home confinement.

IV

Defendant simply seeks home confinement under the CARES Act, and not a reduction of his sentence based on an argument for compassionate release.  See 18 U.S.C. § 3582(c)(1)(A).  Regardless of the nature of defendant's medical condition or the existence of the coronavirus pandemic, Congress did not provide the courts with the authority to release inmates into home confinement at an earlier time under the CARES Act.  See, e.g., United States v. Mansaray, No. 15-526, at *6 (E.D. Pa. Jun. 10, 2020) and United States v. Rodriguez-Collazo, No. 14-378, at *2 (E.D. Pa. May 4, 2020).  This discretion rests solely with the Attorney General and the BOP Director.  Id.

Accordingly, we will deny the petition of defendant Shaun Pettiway to transfer him to home confinement under the CARES Act.